174 487
202 612

## Frank L. Froment *v.* George B. Lessig et al.

*Trusts and trustees—Corporations—Committee of creditors to reorganize corporation.*

On a bill in equity to declare void a sale of real estate, it appeared that the real estate in question had been the property of an insolvent corporation, and that it had been bought in at a sheriff's sale by a committee of creditors of the corporation, appointed to purchase the property, levy an assessment on the creditors, and organize a new corporation. Plaintiff was a large stockholder of the corporation, and also a creditor, who had entered into the agreement. The committee purchased the plant at public sale for $4,000 and assumed other liens thereon for about $5,000 more, and proposed to raise $20,000, by issuing mortgage bonds and distributing them among the creditors at the rate of 50 per cent of their claims, to pay off certain liens on the property, reimburse themselves and provide a fund for working the plant. This proposal was defeated through the objection of plaintiff and other creditors, and instead the committee was ordered by a majority of the creditors, against the objection of plaintiff, to sell the property and reimburse themselves. Plaintiff was not present at the meeting which authorized the committee to sell the property, but he had notice of the meeting, and was represented by his brother. *Held,* that the plaintiff was not entitled to have the sale set aside and specific performance of the agreement.

Argued March 3, 1896. Appeal, No. 31, Jan. T., 1896, by plaintiff, from decree of C. P. Berks Co., Equity Docket, 1892, No. 551, dismissing bill in equity. Before GREEN, McCOL-LUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to set aside the sale of real estate and compel the performance of an agreement between plaintiff and defendants.

There were about thirty defendants.

The case was referred to Henry C. G. Reber, as master, who reported as follows :

1. That the Blandon Iron and Steel Company at Blandon, Berks county, Pa., was insolvent, and on the 9th of October, 1891, made an assignment for the benefit of creditors to Charles B. Froment. That, at the time of the assignment of the Blandon Iron and Steel Company, the plaintiff was the president thereof, and that he was the holder of five hundred and thirty-five shares of stock of a total of one thousand shares ;

2. That the creditors of the said company, including the plaintiff, the aggregate of whose claims amounts to upwards of seventy-five per centum of the whole of the indebtedness, entered into an agreement in writing on the 13th of November, 1891, providing, among other things, for the acquisition of all the real estate, property and assets of the said Blandon Iron and Steel Company, the reorganization of the old company, or the creation of a new corporation, the transfer of the real estate, property and assets aforesaid to such reorganized company or new corporation, the transfer of all the claims of the parties to the said agreement, including the right to receive any dividend out of the assigned estate by a committee, such dividend to be used in the payment of any property purchased by the committee, the issuance of stock of the reorganized or new corporation to the said creditors at par for the amount of their claims respectively, and the payment of all expenses and costs of the reorganized company by the levying of an assessment pro rata on the parties to the said agreement. That it was provided in said agreement that George B. Lessig, Jerome L. Boyer, and George F. Baer should be a committee with full power to act for and in behalf of all parties in effecting the said reorganization, and that the said agreement should become binding upon all the parties thereto when 75 per cent in amount of the creditors of the said Blandon Iron and Steel Company should have signed the same; that the aggregate of claims held by the parties who signed the said agreement was $40,049.60, an amount largely in excess of 75 per cent of the aggregate indebtedness of the said corporation;

3. That the real estate and rolling mill of the said company was bound by the following incumbrances, viz: (*a*) A dower of $278.63; (*b*) A mortgage of G. A. Nicoll's estate for $5,000; (*c*) A mortgage of George Harrison in trust for the First National Bank of Reading, Pa., the balance due thereon being $3,600; (*d*) A mortgage of $50,000 given to secure coupon bonds of the said Blandon Iron and Steel Company, of which bonds but $24,000 had been negotiated, and upon all of which incumbrances some interest had accrued;

4. That, at the time of the said agreement for the benefit of creditors, the said company was indebted to Frank L. Froment in the sum of $13,676.79, for which claim the said plaintiff held

as collateral security $14,000 of the $24,000 coupon bonds secured by a $50,000 mortgage on said property, the balance of $10,000 being held by the Union Bank of Reading, Pa., as collateral security for promissory notes of the company amounting to $5,000, upon which notes the plaintiff was an indorser;

5. That the said Frank L. Froment signed the said agreement of creditors, and thereby elected and determined to stand with the unsecured creditors in the agreement to the extent of his claim without the bonds, in order to secure the benefits and advantages that would accrue to him by the performance of said agreement. That all the creditors so signing, as aforesaid, thereby agreed to place themselves on the basis of the agreement, and that since its execution they stand upon a common equality;

6. That on the 6th of February, 1892, the sheriff of Berks county, pursuant to a writ of levari facias issued upon a judgment which had been obtained in a proceeding of scire facias upon the judgment of George Harrison in trust for the First National Bank of Reading, Pa., exposed the rolling mill and real estate of the said company at public sale; that the plaintiff refrained from bidding upon the said property, which was then sold by the sheriff to George B. Lessig, Jerome L. Boyer, and George F. Baer, the committee of creditors aforesaid, for the sum of $4,000, subject to a dower and the mortgage of the G. A. Nicolls's estate;

7. That the said committee also purchased at the assignee's sale of the personal property of the said Blandon Iron and Steel Company, ore, iron, and other materials amounting to $3,502.85, to be used by the new company in the operation of the said mill;

8. That upon the passage and adoption of the resolution of instructions by the creditors, February 17, 1892, the committee were no longer authorized or required to proceed to organize a new corporation, or to reorganize the old corporation and to issue to the creditors who had signed the said agreement including the plaintiff's shares of stock at par for the amount of their several claims, levying an assessment upon the said creditors pro rata for all expenses incurred thereby;

9. That the said committee, in pursuance of the resolution of instructions passed by the creditors at a meeting held Febru-

ary 17, 1892, were lawfully empowered and authorized to enter into an agreement with the National Union Bank of Reading, Pa., so as to prevent the necessity of having the sheriff's sale of said property set aside, and prevent the costs and delays incidental thereto, and provide for the relief of the said committee from the responsibility which they had incurred in behalf of the said creditors ;

10. That the said committee, in pursuance of the resolution of instructions passed by the creditors at a meeting held February 17, 1892, were lawfully empowered and authorized to advertise the said property to be sold at public sale, and did sell the same on the 23d of April, 1892, to the said Charles H. Schaeffer for the sum of $14,975;

11. That the amount of money, $20,000, required by the committee for their reimbursement for expenses incurred, and for liens assumed in the purchase of the real estate, would not have been much, if any, in excess of the amount required for said purposes;

12. That the sale of the real estate made by the committee on the 23d of April, 1892, to Charles H. Schaeffer in obedience to the instructions of the creditors contained in a resolution passed February 17, 1892, notwithstanding the objection to said sale by the plaintiff, was a legal and a valid sale.

### CONCLUSION OF LAW.

Under the facts as found by the master, it is clear that the plaintiff in this case is not in a position to demand that the committee execute the original agreement of the creditors, because, in the first place, when he received notice of the meeting of the 17th of February, 1892, he should have appeared at that meeting and insisted upon the execution of the original agreement. Instead of doing so, he sent his brother there, who informed the committee that the plaintiff could not fulfill his share of that contract, and later sent a letter inserting objections to the plan of the committee and proposing a futile scheme of his own. Under the circumstances it seems plain that he must be held to have assented to what the committee did, and is estopped, therefore, from insisting on the performance of that original contract.

But, further, if Mr. Froment was not estopped, could he have insisted that the committee should go forward with the reorgan-

ization when all the creditors but himself had refused to have anything further to do with that reorganization, and when these creditors in the convention duly called, had instructed the committee to do something else? Could Mr. Froment insist that the agents of these creditors—the committee—must go on, incur liabilities, begin suits against their own principals and compel these principals to do that which the principals had unanimously resolved should not be done? Before such a thing could be asked of the committee, it would be necessary for the plaintiff to tender to the committee a performance of not only his own part of the contract, but he must also tender a performance for all the others. He cannot expect the committee to bear the burden for all the creditors at the behest of one creditor.

The master, therefore, suggests that the following decree be entered:

That the bill in equity filed in the above case as in the court of common pleas of Berks county, sitting in equity, as of No. 551 equity docket, 1892, be dismissed, as to each and every and all of the defendants in the said suit named, with costs to be paid by the plaintiff.

ENDLICH, J., filed the following opinion on exceptions:

. It is a settled principle of chancery jurisdiction that a decree is not of right, but of grace, in the sense explained in Evans v. Reading Chem. Fert. Co., 160 Pa. 209. The question, therefore, whether the plaintiff's prayers are to be granted or not, is not answered by the mere establishment of an original right on his part, as against the other creditors of the Blandon Iron and Steel Company, to performance of the agreement of November 13, 1891, nor by that of a relation of cestui que trust and trustee as between him and the committee appointed by the creditors to carry out its provisions. Conceding his position upon each of these points, it still remains to be considered, whether, under all the circumstances admitted by the pleadings and shown by the proofs, the result he contends for is consonant with equity and fair dealing. That result, it must not be forgotten, would involve the setting aside of what was desired by the majority and acquiesced in by nearly all of the creditors, presumably acting upon an adequate understanding of their own interests, in favor of one of them confessedly both unwilling and unable to comply with his part of the joint undertaking.

It would involve the imposition upon gratuitous mandatories of the burden of continuing the pledge of their individual responsibility for considerable sums of money taken up by them for the benefit of others, and of engaging, at their own expense in the first instance and possibly at their own ultimate risk, in costly and extensive litigation in order to compel performance of that undertaking by each of the parties to it. And it would involve all this under a condition of affairs excluding the possibility of replacing the parties in the same situation in which they originally were. The demand for a decree having such an effect ought to be supported by powerful and undisputable equities. Are they apparent in this record?

When the creditors of the Blandon Iron and Steel Company, including this plaintiff, signed the agreement of November 13, 1891, they gave to the committee appointed therein " full power to act for and on behalf of all " of them in bringing about a new organization or a reorganization of the old company. For the purpose of carrying out the agreement, each of the parties thereto constituted the committee his " attorney in fact, with full power to do any and every act which it may be deemed expedient to do in order to carry out the object contemplated " thereby. Part of this object was to raise by a new mortgage, or by the issue of bonds under an existing one, " the working capital which the committee may decide necessary." When, however, the committee, after having expended a considerable amount of its own money and incurred individual responsibility for still more, declared the necessity of raising by mortgage $20,000 to pay off existing incumbrances, to indemnify themselves and to obtain a couple of thousand dollars working capital, and, pointing out the impracticability of finding outside investors willing to take the bonds to be secured by said mortgage, suggested the apportionment of them among the creditors at the rate of 50 per cent of their claims—it turned out that the grant of plenary power to it by the agreement was a promise made in the night, and that the majority, including the plaintiff, was unwilling to abide by it. In a word, the plan of action determined upon by the committee, the authorized agent of the creditors, and according to the agreement of November 13, 1891, conclusive upon them, was rejected by the principals, who had given it power to act for them. In that action of the creditors

the plaintiff participated; and since it involved a departure
from the agreement, it necessarily implied a submission on the
part of those opposing the recommendation of the committee to
such substitute for the original agreement as should thereafter
be determined upon.    This substitute was provided in the res-
olution of February 17, 1892, directing the committee to dis-
pose of the property on the best terms available so as not to
entail personal loss upon them.    The committee had received
its original mandate from the creditors' meeting; it might law-
fully accept, so far as itself was concerned, a modification of it
from the same authority.    It does not lie in the mouth of one
who refused to stand by the compact as originally made, and
who, by such refusal, aided in bringing about its modification,
subsequently to insist upon its literal performance.    The fact
that its execution was, to him, the consideration upon which he
surrendered what may or may not have been an advantageous
position has nothing to do with this question.    He was one of
those who made it impossible to carry out its stipulations.    In
the face of that impossibility, it is idle to say that the commit-
tee ought nevertheless to have carried it out.    The law exacts
no impossible or unreasonable things: Keeley v. Shanley, 140
Pa. 213; nor will courts presume to understand the interests
of contracting parties better than they themselves understand
them: Phillips v. Blatchford, 137 Mass. 510.    The refusal of
the creditors, including the plaintiff, to carry out their agree-
ment of November 13, 1891, upon the lines laid down by the
committee appointed to determine upon such, shows that the
carrying out of it was not conducive to their interests.    The
resolution of February 17, 1892, is strong evidence to indicate
that, in the opinion of those who passed it, there was no other
practicable method of accomplishing the original purpose of
that agreement.    In the absence of proof of fraud on part of the
committee, or of the existence of some feasible way of effecting
the object of the agreement of November 13, 1891, without
imposing upon the committee burdens and responsibilities not
contemplated by the same, those elements become conclusive
to establish the impracticability of literal or even approximate
performance.    It is doubtless true that the offer of the property
to the plaintiff at the figure requisite to lift its incumbrances and
reimburse the committee was neither the one nor the other.    But

it was, under the circumstances, at least all the plaintiff was enti-
tled to, and the nearest possible approach to putting him into
the position he occupied in the beginning.   That he was not in
a situation to accept it is his misfortune, not the fault of these
defendants.   There is nothing in the evidence to make it rea-
sonable to infer that there would have been any difficulty in the
way of giving plaintiff a good title.   Of course, his liability to
pay would have depended upon its procurement.   I am at a loss,
therefore, to understand by what theory of equity the relief
here sought could be justified.

The exceptions to the master's report will be dismissed and
the report confirmed.

The court entered the following decree:

And now, to wit, June 1, 1894, this cause came on to be
heard at this term and was argued by counsel, and thereupon,
upon consideration thereof, it is ordered, adjudged, and decreed,
as follows, viz: That the plaintiff's bill be dismissed and that
the plaintiff pay the costs.

*Error assigned* among others was decree dismissing the bill.

*Cyrus G. Derr,* for appellant.

*Jefferson Snyder, Philip S. Zieber* with him, for appellees.

PER CURIAM, March 27, 1896:

A careful reading of this case convinces us that the findings
of fact by the master and the conclusion of law reached by
him were entirely correct.   The bill was practically for a spe-
cific performance which in view of the manifest facts of the case
ought not to be granted and could not be enforced.   The
learned court below in the opinion on the exceptions to the
master's report has sufficiently indicated the considerations
upon which the report should be sustained, and for the reasons
there stated we affirm the decree, but without prejudice to what-
ever right the plaintiff may have to bring actions for damages.

Decree affirmed and appeal dismissed at the cost of the appel-
lant.